IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

SMITTY E. HARDING,

    Petitioner,

v.                                CIVIL ACTION NO. 1:10cv158
                                     (Judge Keeley)

WILLIAM E. FOX, Warden,

    Respondent.

## REPORT AND RECOMMENDATION
## 28 U.S.C. § 2254

**I. Introduction**

On September 22, 2010, Smitty E. Harding [hereinafter referred to as "petitioner"], a state prisoner, filed a *pro se* petition under the provisions of 28 U.S.C. §2254 complaining that the West Virginia Parole Board has been denying him parole for the previous seven years. On November 19, 2010, the petitioner paid the required $5.00 filing fee. On December 3, 2010, the respondent was ordered to show cause why the petition should not be granted. On December 30, 2010, the respondent filed a Motion to Dismiss with supporting Memorandum. On January 3, 2011, a Roseboro Notice was issued to which the petitioner has not replied.

**II. Factual Background**

On November 23, 1987, the petitioner was found guilty by a jury in the Circuit Court of Raleigh County of the offense of Second Degree Sexual Assault. On December 22, 1987, he was sentenced to life imprisonment. (Doc. 14-1, p. 2). Accordingly, the petitioner is serving an effective sentence of life imprisonment with the possibility of parole after having served fifteen years of incarceration.

The petitioner's first parole hearing was on December 2, 2002. The Board denied the petitioner parole based on its decision that he was not prepared to reintegrate back into society. The petitioner was advised that he would be re-interviewed in 12 months. On December 3, 2003, the petitioner was again denied parole. The Board noted that in his interview, the petitioner failed to convince them that his release on parole would be compatible - or in the best interest of - society in general. (Doc. 14-1, p. 6). The petitioner was informed that he would be re-interviewed in 24 months. On December 1, 2005, the petitioner was again denied parole. The Board again found that the petitioner was not prepared to reintegrate back into society. The petitioner was notified that he would have a re-interview in 3 years. (Doc. 14-1, p 10).

On May 14, 2008, before the petitioner's next scheduled hearing, the Chairman of the West Virginia Parole Board issued a memorandum regarding the statutory requirement of written parole release plans or "home plans:"

> WV CODE 62-12-13 (4) states "Has submitted to the board a written parole release plan setting forth proposed plans for his or her place of residence, employment and, if appropriate, his or her treatment plans regarding education and post release counseling and treatment, the parole release plan having been approved by the commissioner of corrections or his or her authorized representative."
>
> Therefore, effective June 1, 2008, the West Virginia Parole Board will only interview parole eligible inmates with approved home plans. Any inmate without an approved home plan will be given a FURTHER CONSIDERATION, by the Board.
>
> Approved home plans must be submitted to the Parole Board at least one week prior to the parole interview. This is to ensure that the inmate's victims and families do not attend unnecessarily.

(Doc. 14-1, p. 12). This memorandum represented a change in practice because prior to its issuance, an inmate who did not have a home/parole plan approved by the commissioner of the West Virginia Division of Corrections would still be interviewed and considered for parole by the

2

Parole Board. However, if the Parole Board granted the inmate parole, the inmate would not be released on parole until he or she had a home/parole plan which was approved by the Commissioner of Corrections.

In December of 2008, the petitioner was scheduled for a parole consideration hearing. However, because he did not have a home parole plan which had been approved by the Commissioner of Corrections, he did not have a hearing and was placed on further consideration. The petitioner was told that his appearance before the Board would be waived until he had such approval (Doc. 14-1, p. 15).

On July 22, 2009, the petitioner filed a "Petition for Expedited Peremptory Writ of Prohibition" challenging the requirement for him to have a home/parole plan approved by the Commissioner of Corrections prior to being considered for parole release, as an impermissible *ex post facto* application of law and as being in violation of Rowe v. Department of Corrections, 170 W.Va. 230, 292 S.E.2d 650 (1982). (Doc. 14-3, pp. 2-9) The Petition was denied by the Raleigh County Circuit Court on September 10, 2009. (Doc. 14-3, pp. 10-12).

In December of 2009, the petitioner was scheduled for a parole consideration hearing. He was again not seen by the Parole Board and placed on further consideration status due to the fact that he did not have a home/parole plan which had been approved by the Commissioner of Corrections. The petitioner was again told that he would not be seen by the Parole Board until he had an approved home/parole plan. (Doc. (Doc. 14-3, p. 15).

On January 15, 2010, the petitioner filed a Petition for Writ of Mandamus/appeal with the Supreme Court of Appeals of West Virginia challenging the change in practice set forth in the Parole Board's May 14, 2008 memorandum. On April 14, 2010, the Supreme Court declined to issue a rule to show cause and dismissed the Petition. (Doc. 14-3, p. 17).

On June 11, 2010, the West Virginia Code § 62-12-13 was revised regarding parole or "home" plans as follows:

> (b) Any inmate of a state correction center is eligible for parole if he or she:
>
> (4) Has prepared and submitted to the Board a written or parol release plan setting forth proposed plans for his or her place of residence, employment and, if appropriate, his or her plans regarding education and post-release counseling and treatment. The Commissioner of Corrections or his or her designee shall review the plan to be reviewed and investigated and provide recommendations to the board as to the suitability of the plan; Provided, That in cases in which there is a mandatory thirty day notification period required prior to the release of the inmate, pursuant to section twenty-three of this article, the board may conduct an initial interview and deny parole without requiring the development of a plan. In the event the board does not believe parole should be denied, it may defer a final decision pending completion of an investigation and receipt of recommendations. Upon receipt of the plan together with the investigation and recommendation, the board, through a panel, shall make a final decision regarding the granting or denial of parole; and

W.Va. Code, § 62-12-13(b)(4)(2010)

Under this statutory revision, an inmate's parole/home plan no longer requires approval of the Commissioner of Corrections in order for that inmate to meet the parole eligibility requirement of West Virginia Code, § 62-12-13 (b) (4). Now, an inmate only needs to have his or her plan investigated by Corrections.

On May 19, 2010, a parole/home plan was submitted by the petitioner. On June 17, 2010, just after the effective date of the statutory revision, the petitioner's written parole/home plan was investigated and reviewed by Corrections. (Doc. 14-3, pp. 28-29). On June 25, 2010, an updated psychological evaluation of the petitioner was completed. (Doc. 14-3, pp. 31-33). [1]

---

[1] The undersigned notes that the psychological evaluation submitted by the respondent as Exhibit 12 is redacted to the point that should the court feel it necessary to review said evaluation, the respondent will be required to submit a complete evaluation

On July 15, 2010, the petitioner appeared for a parole consideration hearing in front of the Parole Board. The petitioner was denied parole and informed that he would have a another review in 12 months. In reaching its decision to deny parole, the Parole Board indicated that it had "carefully considered all the factors disclosed in your record, considering the positive as well as the negative factors in various official reports including court documents and the results of your personal interview. It is our final decision that you are not prepared to reintegrate back into society. Your interview failed to convince the board your release on parole would be compatible with - or in the best interests of - society in general." (Doc. 14-3, p. 36). The Board also specifically noted that its reasons for denial included the circumstances of the petitioner's crime, lengthy criminal record and poor institutional record. (Id.).

### III. Petitioner's Federal Habeas Corpus Claims

In his petition for habeas corpus relief, the petitioner alleges a denial of due process by the Parole Board through violation of a clearly established liberty interest. The petitioner expounds on this claim by noting that he "has been before the State Parole board now, many times since December 10, 2003, when [he] became eligible parole after meeting all the requirements for parole, the Board refuses to comply with the expatations [sic] of release, where [he] has done all asked and more." (Doc. 1, p.5).

### IV. Respondent's Motion To Dismiss

The respondent contends that the petitioner is procedurally barred from pursuing any claims outside of the parole board's decision not to consider him for parole from December 2008 through June 2010. In addition, the respondent argues that the petitioner's claim that the Parole

---

under seal.

Board failed to consider him for parole from December 2008 through June 2010 does not raise a cognizable federal constitutional due process claim.

V. **Analysis**

A. **Exhaustion**

Absent a valid excuse, a state prisoner must exhaust all available state judicial remedies before seeking federal habeas corpus relief. See 28 U.S.C. §2254(b). The petitioner bears the burden of proving exhaustion. See Beard v. Pruett, 134 F.3d 615, 619 (4th Cir. 1998); Matthews v. Evatt, 105 F.3d 907. 911 (4th cir. 1997).

In order to exhaust state remedies in West Virginia, a petitioner must seek relief in both the Circuit Court and the Supreme Court of Appeals. See McDaniel v. Holland, 631 F.Supp. 1544 (1986). In the instant case, the petitioner filed one petition for Writ of Mandamus in the Circuit Court of Raleigh County, and he filed an appeal of this decision in the Supreme Court of Appeals of West Virginia. In both the circuit court petition and the Supreme Court appeal, the petitioner raised the claim that the Parole Board was refusing to consider him for parole because he did not have a "home plan" or parole plan which had been approved by the Commissioner of Corrections.

However, in the petition pending before this Court, the petitioner presents a general due process claim regarding the denial of parole from 2003 to present, including his July 2010 denial of parole. Such a general due process claim was never presented to either the Circuit Court of Raleigh County or the Supreme Court of Appeals of West Virginia. Accordingly, the plaintiff has not exhausted his state remedies on the claim raised before this court, and therefore, his petition should be dismissed. Rose v. Lundy, 455 U.S. 509, 515-516 (1982). However, even if the petitioner had exhausted his state remedies, his petition would still be due to be dismissed.

B. **Limitation Period**

In 1996, the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA") was enacted, establishing a one-year limitation period within which to file any federal habeas corpus petition. 28 U.S.C. §2244(d). Section 2244 (d)(1) provides that the period of limitation will begin to run from the latest of four dates:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> © the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. §2244(d)(1); Hill v. Braxton, 277 F.3d 701 (4th Cir.2002); Harris v. Hutchinson, 209 F.3d 325 (4th Cir. 2000).

This one year limitation period applies to all applications for writ of habeas corpus as long as the petitioner is in custody pursuant to a state court judgment. Wade v. Robinson, 327 F.3d 331 (4th Cir. 2003). This includes challenges to the actions of a parole board, and more specifically, due process challenges to parole consideration hearings and ex post facto challenges to changes in the frequency of parole consideration hearings. See fn 2, Wade, supra (citing Morrissey v. Brewer, 408 U.S. 471 (1972); California Dept. Of Corrections, 514 U.S. 499 (1995). Because the denials of the Parole Board in 2002, 2003, and 2005 occurred well over a year prior to the date the petitioner filed in his petition in the Circuit Court of Raleigh County in 2009, there are no tolling periods resulting from that action, and the petitioner is time barred from pursing claims regarding those denials before this Court.

7

C. <u>**State Law Claims**</u>

Pursuant to 28 U.S.C. § 2254(a):

> The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of the State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.

Parole is a statutory creation and, as such, eligibility and criteria is for the state to determine. See <u>Greenholtz v. Inmates of the Nebraska Penal and Correctional Complex</u>, 442 U.S. 1, 7-8 (1979)("Moreover, to ensure that the state-created parole system serves the public-interest purposes of rehabilitation and deterrence, the state may be specific or general in defining the conditions of release and the factors that should be considered by the parole authority."). A state inmate has no inherent right under the United States Constitution or federal law to be considered for parole or to have particular criteria for eligibility. <u>Greenholtz</u>. Accordingly, "[p]arole eligibility is a question of state law and therefore is not cognizable on federal habeas review." <u>Ramdass v. Angelone</u>, 187 F.3d 396, 407 (4th Cir. 1999). Therefore, this Court does not have jurisdiction to entertain the instant petition.

**VI. Recommendation**

Based on the foregoing, it is recommended that the respondent's Motion to Dismiss (Doc. 14) be **GRANTED** and the petition be **DISMISSED**.

Within fourteen (14) days after being served with a copy of this report and recommendation, any party may file with the Clerk of Court written objections identifying those portions of the recommendation to which objection is made and the basis for such objections. A copy of any objections should also be submitted to the Honorable Irene M. Keeley, United States District Judge. Failure to timely file objections to this recommendation will result in waiver of the

right to appeal from a judgment of this Court based upon such recommendation. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk is directed to send a copy of this Report and Recommendation to the *pro se* petitioner by certified mail, return receipt requested, to his last known address as shown on the docket, and to counsel of record via electronic means.

DATED:  May 9, 2011

   /s/ James E. Seibert
**JAMES E. SEIBERT**
**UNITED STATES MAGISTRATE JUDGE**